IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| SARAH JEAN COLEGROVE,<br><br>Plaintiff,<br><br>vs.<br><br>NANCY A. BERRYHILL, Acting Commissioner of the Social Security Administration,<br><br>Defendant. | CV 17-99-BLG-TJC<br><br>**ORDER** |

On July 10, 2017, plaintiff Sarah Jean Colegrove ("Plaintiff") filed a complaint pursuant to 42 U.S.C. § 405(g) of the Social Security Act, requesting judicial review of the final administrative decision of the Commissioner of Social Security ("Commissioner") regarding the denial of Plaintiff's claim for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401-433, 1381-1383(f). (Doc. 1.) On September 12, 2017, the Commissioner filed the Administrative Record ("A.R."). (Doc. 4).

Presently before the Court is Plaintiff's motion for summary judgment, seeking reversal of the Commissioner's denial and remand for an award of disability benefits. (Doc. 11.) The Commissioner submitted a response brief on

December 28, 2017 (Doc. 12); Plaintiff filed a reply on January 10, 2018.  The

motion is fully briefed and ripe for decision.  (Doc. 13.)

For the reasons set forth herein, and after careful consideration of the record

and the applicable law, the Court finds the case should be **REMANDED** for

further administrative proceedings.

## I.     PROCEDURAL BACKGROUND

Plaintiff filed an application for disability insurance benefits in September

2013, and an application for supplemental security income benefits in October

2013.  (A.R. 210-223.)  Plaintiff alleges she has been unable to work since August

15, 2013.  (A.R. 214.)  The Social Security Administration denied Plaintiff's

application initially on March 3, 2014, and upon reconsideration on August 25,

2014.  (A.R. 124-159.)

On September 25, 2014, Plaintiff filed a written request for a hearing.  (A.R.

168-169.)  Administrative Law Judge Lloyd E. Hartford (the "ALJ") held a hearing

on September 24, 2015.  (A.R. 35-115.)  On February 22, 2016, the ALJ issued a

written decision finding Plaintiff not disabled.  (A.R. 15-34.)

Plaintiff requested review of the decision on April 22, 2016.  (A.R. 209.)

The ALJ's decision became final on May 12, 2017, when the Appeals Council

denied Plaintiff's request for review.  (A.R. 1-6.)  Thereafter, Plaintiff filed the instant action.

## II.    LEGAL STANDARDS

### A.    Scope of Review

The Social Security Act allows unsuccessful claimants to seek judicial review of the Commissioner's final agency decision.  42 U.S.C. §§ 405(g), 1383(c)(3).  The scope of judicial review is limited.  The Court must affirm the Commissioner's decision unless it "is not supported by substantial evidence or it is based upon legal error."  *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999).  *See also Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) ("We may reverse the ALJ's decision to deny benefits only if it is based upon legal error or is not supported by substantial evidence."); *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995).

"Substantial evidence is more than a mere scintilla but less than a preponderance."  *Tidwell*, 161 F.3d at 601 (citing *Jamerson v. Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997)).  "Substantial evidence is relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion."  *Flaten*, 44 F.3d at 1457.  In considering the record as a whole, the Court must weigh both the evidence that supports and detracts from the

ALJ's conclusions. *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985); *Day v. Weinberger*, 522 F.2d 1154, 1156 (9th Cir. 1975)). The Court must uphold the denial of benefits if the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) ("Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld."); *Flaten*, 44 F.3d at 1457 ("If the evidence can reasonably support either affirming or reversing the Secretary's conclusion, the court may not substitute its judgment for that of the Secretary."). However, even if the Court finds that substantial evidence supports the ALJ's conclusions, the Court must set aside the decision if the ALJ failed to apply the proper legal standards in weighing the evidence and reaching a conclusion. *Benitez v. Califano*, 573 F.2d 653, 655 (9th Cir. 1978) (quoting *Flake v. Gardner*, 399 F.2d 532, 540 (9th Cir. 1968)).

### B.     Determination of Disability

To qualify for disability benefits under the Social Security Act, a claimant must show two things: (1) she suffers from a medically determinable physical or mental impairment that can be expected to last for a continuous period of twelve months or more, or would result in death; and (2) the impairment renders the claimant incapable of performing the work she previously performed, or any other

substantial gainful employment which exists in the national economy. 42 U.S.C. §§ 423(d)(1)(A), 423(d)(2)(A). A claimant must meet both requirements to be classified as disabled. *Id*.

The Commissioner makes the assessment of disability through a five-step sequential evaluation process. If an applicant is found to be "disabled" or "not disabled" at any step, there is no need to proceed further. *Ukolov v. Barnhart*, 420 F.3d 1002, 1003 (9th Cir. 2005) (quoting *Schneider v. Comm'r of the Soc. Sec. Admin*., 223 F.3d 968, 974 (9th Cir. 2000)). The five steps are:

1. Is claimant presently working in a substantially gainful activity? If so, then the claimant is not disabled within the meaning of the Social Security Act. If not, proceed to step two. *See* 20 C.F.R. §§ 404.1520(b), 416.920(b).

2. Is the claimant's impairment severe? If so, proceed to step three. If not, then the claimant is not disabled. *See* 20 C.F.R. §§ 404.1520(c), 416.920(c).

3. Does the impairment "meet or equal" one of a list of specific impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, then the claimant is disabled. If not, proceed to step four. *See* 20 C.F.R. §§ 404.1520(d), 416.920(d).

4. Is the claimant able to do any work that he or she has done in the past? If so, then the claimant is not disabled. If not, proceed to step five. *See* 20 C.F.R. §§ 404.1520(e)-(f), 416.920(e)-(f).

/ / /

5. Is the claimant able to do any other work?  If so, then the claimant is not disabled.  If not, then the claimant is disabled.  *See* 20 C.F.R. §§ 404.1520(g), 416.920(g).

*Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001).

Although the ALJ must assist the claimant in developing a record, the claimant bears the burden of proof during the first four steps, while the Commissioner bears the burden of proof at the fifth step.  *Tackett v. Apfel*, 180 F.3d 1094, 1098, n.3 (citing 20 C.F.R. § 404.1512(d)).  At step five, the Commissioner must "show that the claimant can perform some other work that exists in 'significant numbers' in the national economy, taking into consideration the claimant's residual functional capacity, age, education, and work experience."  *Id*. at 1100 (quoting 20 C.F.R. § 404.1560(b)(3)).

## III.   FACTUAL BACKGROUND

### A.   The Hearing

A hearing was held before the ALJ on September 24, 2015, in Billings, Montana, and the following testimony was provided.

#### 1.   Plaintiff's Testimony

Plaintiff lives with her husband in an apartment in Sidney, Montana.  (A.R. 55.)  Plaintiff's husband works at Reynolds Warehouse Grocery, where Plaintiff

used to work.  (A.R. 55-56.)  Plaintiff and her husband had a daughter, but she has been adopted because they could not provide for her.  (A.R. 56, 96.)

Plaintiff was first diagnosed with systemic lupus erythematosus in 2011. Plaintiff testified that lupus was the only impairment she alleged at the time of her initial application for disability benefits.  (A.R. 59-60.)  At the time of the hearing, however, Plaintiff also was alleging disability based in whole or in part on depression, left knee replacement, and back pain.  (A.R. 60-62.)

As for past employment, Plaintiff worked as a junior aide at Sidney Health Center ("SHC") from 2008 to 2009, earning $9,006.00 in 2009.  (A.R. 66.)  She also worked at SHC in 2011 as a dishwasher, and earned $7,032.00.  (A.R. 67.)  In 2012, she worked at the Sidney Hotel as a housekeeper, earning $2,006.00, in addition to the $11,249.00 she earned that year from her dishwashing job.  (A.R. 67-68.)

Most recently, Plaintiff worked at Reynolds Grocery for a few months in 2014.  Plaintiff worked five days per week from 11:00 a.m. until 5:00 p.m., earning $11.00 per hour.  (A.R. 72-73.)  She was initially hired as a cashier, but was moved to the deli after making mistakes.  (A.R. 77-79.)  After switching to the deli, however, she was told she was moving too slowly, and she ultimately was fired. (A.R. 79.)

Plaintiff testified she could not return to her job as a junior aide.  She described the position as helping CNAs at a nursing home or extended care facility.  (A.R. 65-66).  She testified, "you feed the residents, you stock the rooms, you basically assist the CNAs…with whatever you need – with whatever needs done."  (A.R. 65-66.)  Plaintiff said she enjoyed the job, but it requires sitting and standing, which she cannot "do a lot of" anymore.  (A.R. 66.)

She also testified she left the dishwashing job at SHC because she "just flat-out couldn't do it anymore."  (A.R. 80.)  She said the same was true with her housekeeping job.  She testified she tried but "couldn't keep up."  (A.R. 81.)  Plaintiff elaborated that her physical problems have prevented her from performing the jobs, even before her knee replacement.  (A.R. 81-82.)  She cited pain in her hips and back, and difficulty standing.  (A.R. 82.)

Plaintiff also testified about her ability to perform household chores.  She said she "used to be able to vacuum on a somewhat regular basis," but now is lucky to do so once per month.  (A.R. 83.)  Standing to wash the dishes hurts her knees and back.  (A.R. 83.)  Plaintiff also has difficulty lifting the laundry hamper when it is full of clothes.  (A.R. 88.)  Lifting causes pain in her arms and back. (A.R. 88.)  She estimates that she can perform household chores for two minutes before needing to take a 30-minute break.  (A.R. 89.)  Plaintiff also has difficulty

sitting for long periods of time, due to problems with her back and hips. (A.R. 87.) She is forced to change positions frequently.

Plaintiff underwent a total knee replacement in July of 2015. (A.R. 73.) Plaintiff was not given specific limitations following the surgery, but she was limited by post-operative pain. (A.R. 74.)

After her surgery, Plaintiff attended physical therapy two times per week, but had recently finished at the time of the hearing. (A.R. 57-58.) She explained that she was discharged from physical therapy because she met the goals that were set at the beginning, which she described as "[t]o be able to get – basically get up and down the stairs in my apartment and walk – be able to walk on my cane and get around my house and easily enough that I could basically do so independently." (A.R. 58.) She began using the cane because she otherwise "wasn't going to be able to get around," but no provider prescribed the cane. (A.R. 58.)

As for medications, Plaintiff testified she takes over-the-counter ibuprofen for pain, in addition to the following prescribed medications: Cymbalta, prednisone, Topamax, ZTF, Klor-Con, Plaquenil, Sinovac, Simvastatin, Furosemide, Gabapentin, and Sellset. (A.R. 74.) A Medicaid waiver covers some of the cost of the medications, and her husband's income pays for the rest. (A.R.

74.)  The only noticeable side effect from her medications is constipation from the Sellset, which she takes to treat her lupus.  (A.R. 75.)  Plaintiff was prescribed Hydrocodone following her knee surgery.  She finished the initial cycle but did not refill the prescription because her "knee didn't really hurt all that badly."  (A.R. 76.)

Plaintiff testified, however, that the pain in her joints and back cause problems with sleep.  (A.R. 84-85.)  The sleep problems result in her "dragging [herself] out of bed, sometimes very painfully," and sometimes caused her to miss work and treatments.  (A.R. 85.)

Plaintiff also testified that she suffers from depression.  (A.R. 100.)  When depressed, she said "I basically just curl up in a ball and basically don't want to do anything."  (A.R. 100-101.)  During these periods she neglects household chores and personal care.  She reports feeling depressed once every two to three weeks, for periods of two or three days at a time.  (A.R. 101.)

She confirmed she had been attending a mental health program at Eastern Mental Health for the last two or three years.  (A.R. 101.)  She said she initially began attending so she could "learn how to get on a regular schedule so I can learn how to get back to work," but now she attends because "those people have become my friends and because I basically go to get out of the house."  (A.R. 102.)

Plaintiff spends six hours per day there at group counseling, where she "discuss[es] ways to cope." (A.R. 102.)

Plaintiff said she has good and bad days. (A.R. 85.) On bad days, Plaintiff will stay in bed as long as she can. After getting out of bed, Plaintiff will "watch either YouTube or just wind up doing the dishes until my knees won't support me anymore." (A.R. 86.) Prior to her knee surgery, Plaintiff was having bad days "about once a week." (A.R. 86-87.)

Plaintiff also testified she believes she has a learning disability. (A.R. 97.) She earned Cs and Ds in school, but did graduate from high school. (A.R. 97-98.) She claims to have problems with concentration and focus. (A.R. 98.) Plaintiff asked Eastern Montana Mental Health Center to keep track of her medications because she was having trouble following the instructions for taking them. (A.R. 100.)

### 2.    Vocational Expert's Testimony

Michael Sprock, a Vocational Expert (the "VE"), also testified before the ALJ. (A.R. 105-113.) The ALJ provided the VE with following residual functional capacity ("RFC") that was developed by a non-examining physician on March 3, 2014:

> Plaintiff had the ability to occasionally lift and carry 20 pounds, and frequently lift and carry up to 10 pounds; she could stand or walk for 4

hours, and sit a total of 6 hours in and 8-hour workday; perform unlimited pushing and pulling, except as set forth for lifting and carrying; frequently climb ramps and stairs; occasionally climb ladders, ropes, and scaffolds; frequently balance, stoop, kneel, and crawl; no manipulative, visual, or communicative limitations; and should avoid concentrated exposure to extreme cold and avoid hazards such as machinery and working at heights.

(A.R. 107.)  The VE said that RFC suggested a limited range of light work, and offered the following jobs as examples that Plaintiff could perform: (1) small products assembler (SVP of 2 and physical demand light); (2) ticket taker (SVP of 2 and physical demand light); and cashier II (SVP of 2 and physical demand light). (A.R. 108-109.)  The VE clairified the number of each job in the national economy would be reduced by 50 percent to account for Plaintiff's standing and walking limitations.  (A.R. 108.)  The VE also confirmed the above RFC would allow Plaintiff to perform a full range of sedentary work, including such jobs as addressor, call-out operator, and order clerk.  (A.R. 109.)

The ALJ then asked the VE to assume a person with the same RFC as stated before, but who could stand and walk six hours in an eight-hour day.  (A.R. 110.) The VE said the individual also could perform the job of small products assembler II.  (A.R. 111.)

Next, the ALJ discussed an RFC developed at the reconsideration phase, which found that Plaintiff could perform sedentary work, including such jobs as

addressor, call-out operator, and order clerk.  (A.R. 110.)  The VE confirmed those jobs would qualify as sedentary.

Then ALJ next asked the VE if a person with the same limitations as the original RFC, but who could stand and walk for six hours in an eight-hour day, would be able to perform Plaintiff's past job of housekeeper.  (A.R. 111.)  The VE responded that such a person would be able to perform that job.  (A.R. 111.)

However, the ALJ asked the VE if "a hypothetical person that testified exactly as the Claimant did today" would be able to perform any jobs that exist in the national economy.  (A.R. 110.)  The VE answered, "no," explaining that Plaintiff's testimony indicated she would need more breaks and would miss more days of work than an employer would allow.  (A.R. 110-111.)

The VE provided the following additional testimony upon questioning by Plaintiff's counsel.  The effect of employee tardiness will depend on the employer and on the extent of tardiness.  For example, if an employee is late "a minute or two it may be okay, but if they're tardy and it's an hour and a half, they probably will be terminated."  (A.R. 112.)    He also testified that anything more than one absence per month can lead to termination for unskilled work.  (A.R. 112.)  Consequently, multiple "bad days" in one month that result in absences will lead to termination.  (A.R. 112.)

### B.     Medical Evidence

The A.R. also includes the following pertinent medical records.  Additional records may be discussed below as appropriate.

### 1.     Treating Physician Evidence

### a.     Edward L. Pierce, MD

Dr. Pierce is Plaintiff's long-term treating physician who treated Plaintiff at SHC.  Dr. Pierce submitted a medical opinion statement dated January 13, 2016. (A.R. 1018-1020.)  The statement contains the following germane opinions: diagnoses of lupus and nephrotic syndrome; prognosis of "fair"; Plaintiff's symptoms include pain in her right knee, and severe fatigue; she recently had her left knee replaced due to osteonecrosis resulting from prolonged steroid use, and "will probably need her right knee replaced"; objective signs of her symptoms include x-rays showing osteonecrosis of the distal femur; Plaintiff's impairments lasted or can be expected to last at least twelve months; Plaintiff is not a malingerer; Plaintiff cannot walk a single city block due to knee pain; Plaintiff will be expected to sleep "at least" 12 hours per day; Plaintiff can stand/walk less than two hours in an eight-hour day, and sit about four hours in an eight-hour day; Plaintiff does not need to include periods of walking around during an eight-hour workday; Plaintiff does not need a job that permits shifting positions at will from

sitting, standing, or walking; Plaintiff will sometimes need to take unscheduled breaks due to diuretic use; Plaintiff can rarely lift up to 50 pounds, and can occasionally lift up to ten pounds; Plaintiff can never climb ladders or stairs, and can rarely twist, stoop, and crouch/squat; Plaintiff's impairments are likely to cause "good days" and "bad days"; Plaintiff is likely to be absent from work three or more days per month "because of severe fatigue"; Plaintiff has issues with depression and fatigue that limit her ability to work.  (A.R. 1018-1020.)

### 2. Treating Non-Physician Evidence

#### a. Marie Logan, LCPC

Ms. Logan is a licensed clinical professional counselor at Eastern Montana Community Mental Health Center ("MHC") who provided mental health counseling for Plaintiff.

On November 27, 2013, Ms. Logan diagnosed Plaintiff with "Major Depressive Disorder, Recurrent, Severe."  (A.R. 469.)  Ms. Logan noted Plaintiff's complaints of the following: recurrent episodes of depression lasting longer than two weeks; feeling hopeless and helpless; variation in motivation and interest in pleasurable activities; insomnia and fatigue; disturbance in appetite (eating too much or not at all); impaired concentration during periods of depression; feelings of worthlessness; suicidal ideation, and attempted suicide by overdose in 2013.

(A.R. 469.)  Ms. Logan explained that Plaintiff's treatment plan will focus on dealing with depression, and that Plaintiff will be referred to an "intensive case manager" for assistance in improving her ability to perform activities of daily living and organization.  Notably, Ms. Logan also said the case manager will work with Plaintiff to address her issues maintaining employment, but Ms. Logan did not opine that Plaintiff cannot work.  (A.R. 469.)  Ms. Logan gave Plaintiff a Global Assessment Functioning ("GAF") score of 48.

On December 18, 2013, Plaintiff reported to an appointment with Ms. Logan nearly an hour late.  (A.R. 493.)  Ms. Logan noted Plaintiff's difficulties with time management and organization.  The note discusses the possibility of pursuing vocational rehabilitation.

On January 13, 2014, Plaintiff reported to Ms. Logan that her "depression level continues to be doing pretty well at this time," though there was no change in diagnosis.  (A.R. 489.)  Plaintiff reported that she has struggled in the past to refill her medications on time, and Ms. Logan stressed the importance of keeping track of her medications.

On September 24, 2014, Plaintiff "appeared less stressed and relayed she is feeling less overwhelmed and depressed since obtaining part time employment." (A.R. 551.)  Ms. Logan assessed Plaintiff's progress as "advancing."  Plaintiff had

to stop taking medication due to inability to pay, but that her mood has "responded positively" since she resumed medication. Plaintiff's GAF score was 51.

On December 23, 2014, Plaintiff reported that she was terminated from her job because "to the best of her knowledge she did not work fast enough." (A.R. 555.) Her termination was a "deep disappointment for her as she had hoped to be able to maintain employment." Her GAF scored remained at 51.

On January 30, 2015, Plaintiff "appeared with affect and appearance being brighter." (A.R. 557.) Ms. Logan noted "grief issues associated with deaths of family members and some anniversary dates," and she and Plaintiff discussed strategies to help cope with those issues. Plaintiff "actively participated in problem solving" with respect to an unidentified "issue she has recently encountered with life organization." (A.R. 557.) Diagnoses and GAF scores remained unchanged from Plaintiff's prior appointment.

On April 30, 2015, Plaintiff reported that she has "been pushing herself to conduct tasks at home and is nothing that her chronic pain has increased," resulting "in more difficulty with depression." (A.R. 562.) Ms. Logan discussed with Plaintiff the importance of pacing herself with activities in order to manage her physical health issues. Diagnosis and GAF score remained unchanged.

/ / /

### b.    MHC Counselors

The A.R. contains numerous records of Plaintiff's treatment at MHC.  (A.R. 817-1016.)  The only record which mentions Plaintiff's ability to work is a record from Ms. Logan dated August 4, 2015, stating that Plaintiff "continues to experience physical healthy [sic] issues that have impacted employability, consistently conducting activities of daily living, and in consistently participating in mental health services."  (A.R. 998.)

### 3.    Non-Examining Physician Evidence

### a.    William Fernandez, MD

Dr. Fernandez reviewed Plaintiff's medical records, but did not examine her, and did not testify at the hearing.  He issued an opinion on February 28, 2014. (A.R. 126-133, 134-141.)  Dr. Fernandez opined that Plaintiff could lift and carry 20 pounds occasionally and ten pounds frequently.  (A.R. 130.)  Dr. Fernandez found Plaintiff can stand or walk for four hours in an eight-hour workday, and sit for six hours in an eight-hour work day.  (A.R. 128.)  Dr. Fernandez also stated Plaintiff can perform unlimited pushing/pulling, except as limited for lift and/or carry; frequent balancing, stooping, kneeling, crouching, and crawling; can frequently climb ramps/stairs; and can occasionally climb ladders/ropes/scaffolds. (A.R. 130.)  He noted that Plaintiff should avoid concentrated exposure to extreme

cold and to hazards.  (A.R. 131.)  He ultimately concluded that Plaintiff is not disabled.  (A.R. 133.)

### b.    Tim Schofield, MD

Dr. Schofield reviewed Plaintiff's records at the reconsideration phase, and altered the findings of Dr. Fernandez based on Plaintiff's worsening knee and back problems.  (A.R. 142-149, 150-157.)  Dr. Schofield reduced Plaintiff's exertional capability to "sedentary."  (A.R. 148.)  He ultimately concluded that Plaintiff is not disabled.  (A.R. 149)

### c.    Marsha McFarland, PhD

Dr. McFarland reviewed Plaintiff's mental health records at the reconsideration phase.  (A.R. 146.)  She noted Plaintiff's major depressive disorder diagnosis, and detailed the signs and symptoms that arise frequently in Plaintiff's records, including situational stress associated with financial limitations, loss and bereavement, lack of attention to household chores, missed appointments, and assistance with medication management.  Dr. McFarland ultimately concluded that the "[b]ulk of the evidence does not describe domains as significantly reduced by mental impairments" and "[f]urther mental development is not warranted."  (A.R. 146.)

///

## C.    The ALJ's Findings

The ALJ followed the five-step sequential evaluation process in considering Plaintiff's claim.  First, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of August 15, 2013.  (A.R. 20.) Second, the ALJ found that Plaintiff had the following severe impairments: "[lupus], nephrotic syndrome, and left knee osteoarthritis with avascular necrosis of the left distal femur (and status-post total knee arthroplasty)."  (A.R. 21.)  Third, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meet or medically equal any one of the impairments in the Listing of Impairments.  (A.R. 22-23.)  Fourth, the ALJ stated Plaintiff has the RFC to perform the full range of sedentary work.  (A.R. 23-27.)  The ALJ next found that Plaintiff was not able to perform any past relevant work.  (A.R. 27.)  However, the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, including addresser, call out operator, and order clerk.  (A.R. 27-28.)  Thus, the ALJ found that Plaintiff is not disabled. (A.R. 28.)

## IV.    DISCUSSION

Plaintiff argues that the ALJ erred by (1) failing to provide specific germane reasons for discounting her credibility, (2) erroneously discounting the opinions of

Dr. Pierce and Plaintiff's therapists, and (3) failing to include all impairments in the RFC and in the hypotheticals presented to the VE.

The Commissioner argues the ALJ reasonably found that the objective medical evidence contradicted both Plaintiff's statements concerning her symptoms and limitations, and her providers' opinions regarding her ability to work. The Commissioner further argues the ALJ properly determined Plaintiff's RFC and properly questioned the VE.

## A.     The ALJ's Credibility Determination

Plaintiff argues that the ALJ's credibility determination was erroneous because the ALJ made only a general credibility finding without providing clear and convincing reasons for rejecting her testimony. Plaintiff further argues that her testimony was fully supported by the objective medical evidence. The Commissioner counters that the ALJ properly evaluated Plaintiff's credibility.

The credibility of a claimant's testimony is analyzed in two steps. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). First, the ALJ must determine whether the claimant has presented objective evidence of an impairment or impairments that could reasonably be expected to produce the pain or other symptoms alleged. *Id.* Second, if the claimant meets the first step, and there is no affirmative evidence of malingering, the ALJ may reject the claimant's testimony

only if she provides "specific, clear and convincing reasons" for doing so. *Id.*

"In order for the ALJ to find [the claimant's] testimony unreliable, the ALJ must make 'a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony.'" *Turner v. Comm'r of Soc. Sec. Admin.*, 613 F.3d 1217, 1224 n.3 (9th Cir. 2010). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Reddick*, 157 F.3d at 722 (quoting *Lester*, 81 F.3d at 834). The clear and convincing standard "is not an easy requirement to meet: '[It] is the most demanding required in Social Security cases.'" *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014).

Here, the first step of the credibility analysis is not at issue. The ALJ determined that Plaintiff's medically determinable impairments could reasonably be expected to cause her symptoms, and there is no argument that Plaintiff is malingering. Therefore, the ALJ was required to cite specific, clear and convincing reasons for rejecting Plaintiff's subjective testimony about the severity of her impairments. The Court finds the ALJ failed to so.

In *Brown-Hunter v. Colvin*, 806 F.3d 487, 489 (9th Cir. 2015), the Ninth Circuit held an ALJ fell short of providing specific, clear, and convincing reasons

for rejecting a claimant's testimony by merely reciting the medical evidence in support of his RFC finding. The Court explained that summarizing the medical record "is not the same as providing clear and convincing *reasons* for finding the claimant's symptom testimony not credible." *Id.* at 494 (emphasis in original).

Without the required specificity, the Court cannot meaningfully review the ALJ's decision to determine whether the ALJ arbitrarily discredited Plaintiff's testimony. *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) ("[T]he ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony."); *Brown-Hunter*, 806 F.3d at 492 ("[A]lthough we will not fault the agency merely for explaining its decision with 'less than ideal clarity,' . . . we still demand that the agency set forth the reasoning behind its decision in a way that allows for meaningful review.") (citation omitted).

Here, the ALJ does not discuss Plaintiff's hearing testimony at all in his decision, much less identify specifically which of the claimant's statements he found not credible and which evidence contradicted that testimony. *Brown-Hunter*, 806 F.3d at 495 ("We cannot review whether the ALJ provided specific, clear, and convincing reasons for rejecting Brown-Hunter's pain testimony where, as here, the ALJ never identified *which* testimony she found not credible, and

never explained *which* evidence contradicted that testimony." (Emphasis in original.)) Though the ALJ did discuss Plaintiff's medical records, and though some of those records may correspond to some statements Plaintiff made at the hearing, merely reciting the medical record does not provide sufficient basis for discrediting a plaintiff's testimony, as discussed above.

The ALJ's deficiencies here are made plain by the testimony of the VE, who responded "no" when asked specifically whether a person who testified exactly as Plaintiff did at her hearing would be able to perform any jobs that exist in significant numbers in the national economy. (A.R. 110.) The VE cited both Plaintiff's stated need for extra breaks, and her likelihood of missing more than one day per month on a regular basis, as disqualifying factors derived directly from Plaintiff's testimony. (A.R. 110-111.) At the absolute least, the ALJ was required to provide specific, clear, and convincing reasons for discrediting the testimony that the VE cited as the very basis for this conclusion.

Because the ALJ failed to point to the specific parts of Plaintiff's testimony he found not credible, and failed to link that testimony to particular parts of the record, the ALJ erred. *Brown-Hunter*, 806 F.3d at 494. As such, the Court finds that the ALJ's credibility finding is not supported by specific, clear, and convincing reasons.

The Court further finds that the error is not harmless.  An ALJ's error is harmless if it is "inconsequential to the ultimate nondisability determination." *Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008). Here, the VE testified that if Plaintiff's testimony were fully credited, there would not be any jobs in the national economy that she could perform.  (A.R. 110-111.) Accordingly, a proper determination of Plaintiff's credibility may affect the outcome of Plaintiff's disability claim.

## B.     The ALJ's Evaluation of the Medical Source Opinions

Plaintiff contends that the ALJ failed to give proper weight to the opinions of Dr. Pierce and her "therapists."  Plaintiff does not specifically identify the "therapists" whose opinions she believes the ALJ failed to consider, but the records Plaintiff cites in her brief indicate that she believes the ALJ did not properly credit the opinions of Ms. Logan or the counselors at MHC.

### 1.     Dr. Pierce

In assessing a disability claim, an ALJ may rely on "opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians)." *Lester*, 81 F.3d at 830.  The Commissioner applies a hierarchy of deference to these three

types of opinions. The opinion of a treating doctor is generally entitled to the greatest weight. *Id*. ("As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant."); *see also* 20 C.F.R. § 404.1527(c)(2). "The opinion of an examining physician is, in turn, entitled to greater weight than the opinion of a nonexamining physician." *Lester*, 81 F.3d at 830.

"The opinion of a treating physician is given deference because 'he is employed to cure and has a greater opportunity to know and observe the patient as an individual.'" *Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999) (quoting *Sprague v. Bowen*, 812 F.2d 1226, 1230 (9th Cir. 1987)). "However, the opinion of the treating physician is not necessarily conclusive as to either the physical condition or the ultimate issue of disability." *Id*. *See also Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001) ("Although a treating physician's opinion is generally afforded the greatest weight in disability cases, it is not binding on an ALJ with respect to the existence of an impairment or the ultimate determination of disability.").

If the treating physician's opinion is not well-supported by medically acceptable clinical and laboratory diagnostic techniques, or is inconsistent with other substantial evidence in the record, it is not entitled to controlling weight.

*Orn v. Astrue*, 495 F.3d 625, 631-32 (9th Cir. 2007) (quoting Social Security Ruling 96-2p). Nevertheless, in that event the ALJ must consider the factors listed in 20 C.F.R. § 404.1527(c) to determine what weight to accord the opinion. *See* Social Security Ruling 96-2p (stating that a finding that a treating physician's opinion is not well supported or inconsistent with other substantial evidence in the record "means only that the opinion is not entitled to 'controlling weight,' not that the opinion should be rejected. Treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527."). The factors include: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) supportability of the opinion; (4) consistency of the opinion with the record as a whole; (5) the specialization of the treating source; and (6) any other factors brought to the ALJ's attention that tend to support or contradict the opinion. 20 C.F.R. § 404.1527(c)(2)(I)-(ii), (c)(3)-(6).

Opinions of treating physicians may only be rejected under certain criteria. *Lester,* 81 F.3d at 830. To discount an uncontradicted opinion of a treating physician, the ALJ must provide "clear and convincing reasons." *Id.* To discount the controverted opinion of a treating physician, the ALJ must provide "'specific and legitimate reasons' supported by substantial evidence in the record." *Molina v.*

*Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012)*; Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998). The ALJ can accomplish this by setting forth "a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). "The ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors' are correct." *Reddick*, 157 F.3d at 725. "The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician *or* a treating physician." *Lester*, 81 F.3d at 831 (emphasis in original). However, "the findings of a nontreating, nonexamining physician can amount to substantial evidence, so long as other evidence in the record supports those findings." *Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir. 1996).

Dr. Pierce treated Plaintiff for a number of years, and his treatment records form a substantial portion of the medical evidence in this case. (*See e.g.* A.R. 577-627.) As discussed above, he also completed an opinion statement expressly designed to provide information as to Plaintiff's ability to work. The most salient conclusions contained in the Physical Impairment Questionnaire state that Plaintiff will need to take unscheduled breaks during an eight-hour day due to diuretic use,

that her impairments will produce "good days" and "bad days," and that she is likely to miss on average three or more days per month "because of fatigue." (A.R. 1019-1020.)

Because Dr. Pierce's opinions are contradicted by the opinions of the non-examining physicians, the ALJ must provide "specific and legitimate reasons supported by substantial evidence in the record" to discount Dr. Pierce's opinions. *Lester*, 81 F.3d at 830. The only reasons the ALJ provided for discounting Dr. Pierce's opinions are that "the medical evidence of record does not support the claimant's total inability to walk and in ability [sic] to sit or such drastic problems with postural activities or climbing stairs." (A.R. 26.) The ALJ does not cite any medical records in support of these conclusions.

The Court finds that the ALJ erred in at least two ways. First, the reasons the ALJ provided for discounting Dr. Pierce's opinions are not supported by substantial evidence in the record. First, Dr. Pierce did not opine that Plaintiff has a "total inability to walk and [inability] to sit." Rather, Dr. Pierce opined that Plaintiff cannot walk a full city block and can sit for about four hours in an eight-hour day. Of course, those opinions still may be contrary to the medical evidence in the A.R., but the ALJ cannot satisfy the "specific and legitimate" standard if he mischaracterizes Dr. Pierce's findings.

Next, even assuming the reasons the ALJ provided for discounting the opinions he discussed were specific and legitimate, the ALJ failed entirely to discuss Dr. Pierce's opinions related to Plaintiff's fatigue, the need for unscheduled breaks, or the likelihood of excessive absenteeism.  According to the VE's testimony, these are independent conditions that could preclude Plaintiff from working.

Furthermore, even if the ALJ determined that Dr. Pierce's opinions were not entitled to controlling weight, he must then consider the factors under 20 C.F.R. § 404.1527 in deciding what weight to accord the opinions.  The ALJ did not do so.

Accordingly, the Court finds that the ALJ erred in properly weighing the opinions of Plaintiff's treating physician, Dr. Pierce.  The ALJ did not provide specific and legitimate reasons, supported by substantial evidence in the record, to support his decision to afford Dr. Pierce's opinion only partial weight.

The Court further finds that the error is not harmless.  An ALJ's error is harmless if it is "inconsequential to the ultimate nondisability determination." *Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008). Here, Dr. Pierce opined that Plaintiff likely would require unscheduled breaks and would be likely to miss three or more days of work per month on average, each of which, according to the VE, would preclude her from working.  Accordingly, a

proper determination of Plaintiff's credibility may affect the outcome of Plaintiff's disability claim.

## 2. Ms. Logan and the MHC Counselors

With the exception of Dr. Pierce, Plaintiff does not point to an opinion from any provider, including Ms. Logan and Plaintiff's other "therapists," suggesting that Plaintiff is incapable of working, Plaintiff does cite numerous treatment notes from Plaintiff's mental health providers that detail the effects of her depression, but treatment notes, in general, do not constitute medical opinions. *See* 20 C.F.R. § 416.927(a)(2) ("Medical opinions are statements from acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions.").

Because neither Ms. Logan nor any other therapist offered an opinion regarding Plaintiff's ability to work, their treatment notes do not constitute opinions the ALJ must weigh. *See Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1223 (9th Cir. 2010) (holding that where a physician's report did not assign any specific limitations or opinions regarding the claimant's ability to work, "the ALJ did not need to provide 'clear and convincing reasons' for rejecting [the] report because the ALJ did not reject any of [the report's] conclusions.").

Accordingly, the ALJ did not err with respect to Plaintiff's therapists.

## C.  Failure to Incorporate Impairments into Hypothetical Questions Posed to the Vocational Expert

Hypothetical questions posed to the vocational expert must set out all the limitations and restrictions of the particular claimant. *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988). "The testimony of a vocational expert 'is valuable only to the extent that it is supported by medical evidence.'" *Magallanes*, 881 F.2d 747, 756 (9th Cir. 1989) (quoting *Sample*, 694 F.2d 639, 644 (9th Cir. 1982)). If the assumptions in the hypothetical are not supported by the record, then the vocational expert's opinion that the claimant has a residual working capacity has no evidentiary value. *Embrey*, 849 F.2d at 422. *See also Shumaker v. Astrue*, 657 F.Supp.2d 1178, 1180 (D. Mont. 2009) (holding where the ALJ's hypothetical questions did not accurately reflect the claimant's restrictions established by the medical record, "the ALJ's determination that [the claimant] could perform other work existing in the national economy does not rest on substantial evidence").

As discussed above, the Court has determined the ALJ did not adequately support his reasons for discrediting either Plaintiff's testimony or Dr. Pierce's opinions. Accordingly, these errors may have infected the hypothetical that the ALJ relied on, and in turn, the ALJ's determination that Plaintiff could perform

jobs that exist in the national economy. Therefore, the Court finds the ALJ's determination at step four is not supported by substantial evidence.

## V.    REMAND OR REVERSAL

Plaintiff asks the Court to remand this case for further proceedings. "[T]he decision whether to remand a case for additional evidence or simply to award benefits is within the discretion of the court." *Reddick v. Chater*, 157 F.3d at 728. If the ALJ's decision "is not supported by the record, 'the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.'" *Hill v. Astrue*, 698 F.3d 1153, 1162 (9th Cir. 2012) (quoting *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004)). "If additional proceedings can remedy defects in the original administrative proceedings, a social security case should be remanded. Where, however, a rehearing would simply delay receipt of benefits, reversal [and an award of benefits] is appropriate." *Lewin v. Schweiker*, 654 F.2d 631, 635 (9th Cir. 1981).

The Court finds remand for further proceedings is appropriate. On remand, the ALJ shall consider reconsider Plaintiff's testimony and Dr. Pierce's opinions, paying special attention to the facets of each that correspond to the VE's testimony regarding impairments that would disqualify Plaintiff from working. The ALJ then must adjust Plaintiff's RFC and any hypotheticals as necessary.

## VI.    CONCLUSION

Based on the foregoing findings, the Court orders that the Commissioner's decision is **REVERSED** and this matter is **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent herewith.

DATED this 12th day of September, 2018.

_____
TIMOTHY J. CAVAN
United States Magistrate Judge